**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-00050-REB-CBS

JORGINA HERRERA,

      Plaintiff,

v.

ALLIANT SPECIALTY INSURANCE SERVICES, INC., and
HUDSON INSURANCE COMPANY,

      Defendants.

---

**ORDER CONCERNING MOTION TO DISMISS**

---

**Blackburn, J.**

The matter before me is the defendants' **Motion To Dismiss Amended
Complaint [#24]**[1] filed April 6, 2011. The plaintiff filed a response [#28], and the
defendants filed a reply [#28]. I deny the motion without prejudice and order
supplemental briefing on the subject matter jurisdiction of the court.

**I. JURISDICTION**

I have putative subject matter jurisdiction pursuant to 28 U.S.C. § 1332
(diversity).

**II. STANDARD OF REVIEW**

The defendants' motion to dismiss raises issues under both Fed. R. Civ. P.
12(b)(1) and 12(b)(6). A motion to dismiss under Fed. R. Civ. P. 12(b)(1) may consist of

---

[1] "[#24]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

either a facial or a factual attack on the complaint. *Holt v. United States*, 46 F.3d

1000, 1002 (10th Cir. 1995). Because defendant's motion presents a facial attack, I

must accept the allegations of the complaint as true. *Id*. Plaintiff bears the burden of

establishing that subject matter jurisdiction exists. *Henry v. Office of Thrift*

*Supervision*, 43 F.3d 507, 512 (10th Cir. 1994); *Fritz v. Colorado*, 223 F.Supp.2d

1197, 1199 (D. Colo. 2002). In this order I address the issue of subject matter

jurisdiction.

### III.  PLAINTIFF'S ALLEGATIONS

According to the **Plaintiff's Amended Complaint** [#22], the plaintiff, Jorgina

Herrera, was an employee of the Southern Ute Tribe and the Southern Ute Tribe

Growth Fund. Ms Herrera is not a Native American, and she does not reside on the

Southern Ute reservation. Ms. Herrera alleges that she was and is covered by a policy

of insurance issued by the defendants, Hudson Insurance Company and Alliant

Specialty Services, Inc. (Hudson Policy). Alliant is responsible for the adjustment of

claims brought by employees of the Southern Ute Tribe who sustained injuries arising

from and within the course of their employment with the tribe. Ms. Herrera alleges that

she suffered injuries arising out of and in the course of her employment and that those

injuries are covered under the Hudson Policy.

Ms. Herrera alleges that Hudson and Alliant have breached the terms of the

policy and applicable law in a variety of ways, including underpayment of benefits to

which she is entitled, refusal to provide indemnity benefits in a timely manner, refusal to

provide disfigurement benefits, refusal to pay medical benefits in a timely manner,

refusal to investigate Ms. Herrera's claims in a timely manner, closure of Ms. Herrera's

case prematurely, and refusal to provide permanent partial disability benefits. She

asserts claims for breach of contract, breach of the covenant of good faith and fair

dealing, vicarious liability, equitable estoppel, and fraud.

Ms. Herrera claims entitlement to benefits under the Sovereign Nation Workers'

Compensation and Employers' Liability Insurance Policy issued to the tribe by Hudson

Insurance Company. *Motion To Dismiss* [#3], Exhibit A (Policy).[2]  The Policy provides:

> Sovereign Nation Workers' Compensation means the workers or
> workmen's compensation benefits as established by you [the Tribe].  It
> does not include any state, federal worker or workmen's compensation
> law, any federal occupational disease law or the provisions of any law that
> provide non-occupational disability benefits.
>
> Recognizing the tribe as a sovereign nation, with its corresponding civil
> jurisdiction, the actual benefits provided by this policy are subject to the
> tribal ordinance related to workers compensation benefits, in effect as of
> the effective date of this policy.
>
> In the absence of a tribal ordinance you may or may not elect to utilize a
> state's workers' compensation benefit levels as a guideline for the benefits
> payable under this policy.  However, in no event shall benefits payable
> exceed such state level benefits.  The mere use of a state's benefit levels
> as a guide for payments, however, does not constitute an adoption of such
> state's benefit levels and shall not be construed as a waiver of your
> sovereign immunity.

*Policy*, p. 1 of 7, General Section, ¶ C.

## IV.  ANALYSIS

The defendants' motion to dismiss [#24] is addressed to the plaintiff's amended

complaint [#22].  Previously, the defendant filed a motion to dismiss [#3] addressing the

plaintiff's initial complaint [#1-1], pp 5 - 12.  In the first motion to dismiss, the defendants

---

[2]  If a document is referenced in or attached to the complaint and is central to plaintiff's claims, I may consider an indisputably authentic copy of the document in resolving a motion to dismiss. ***See GFF Corp. v. Associated Wholesale Grocers, Inc.***, 130 F.3d 1381, 1384-85 (10th Cir. 1997).  In her response [#12], the plaintiff says she disputes the authenticity of the defendants' Exhibit A, the Policy, because, she claims, "the actual policy provides that benefits will be paid comparably to Colorado law." *Response* [#12], p. 2.   The policy provided by the defendants provides that state workers' compensation benefit levels may be used as a guideline, but benefits under the policy shall not exceed state level benefits. *Policy*, p. 1 of 7, General Section, ¶ C.  I conclude that the plaintiff has not demonstrated a legitimate dispute over the authenticity of the Policy attached to the defendants' motion to dismiss [#3].

argued that this court does not have subject matter jurisdiction over the plaintiff's claims because the plaintiff's claims are controlled by the law of the Southern Ute Tribe, and not by state law or federal law.  In their present motion [#24], the defendants incorporate the jurisdiction arguments asserted in the earlier motion to dismiss.  When the court's jurisdiction is at issue, the court must address the issue of jurisdiction first.

"In the absence of congressional legislation, . . . tribal governments retain regulatory authority over all matters falling within their inherent sovereignty." *MacArthur v. San Juan County*, 497 F.3d 1057, 1068 (10th cir. 2007).  Generally, the inherent sovereign powers of an Indian Tribe do not extend to the activities of those who are not members of the tribe.  *Montana v. U.S.*, 450 U.S. 544, 565 (1981).  However, there are two important exceptions to the general rule against tribal authority over nonmembers.  First, a tribe "may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id*. Second, a tribe may exercise civil authority "over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id*. at 566. The first exception, the consensual relationship exception, applies to "a nonmember who enters into an employment relationship with a member of the tribe." *MacArthur*, 497 F.3d at 1071.  However, the employment must generally be within the physical confines of the reservation. *Id*. at 1071 - 1072.  "Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 18 (1987).

In this case the plaintiff alleges that she was employed by the Southern Ute Tribe

4

and the Southern Ute Tribe Growth Fund.  However, she does not specify whether her

employment was within or outside the confines of the reservation. The defendants seem

to assume that the plaintiff's employment was within the confines of the reservation.

However, the defendants do not provide any declarations or other evidence to support

this assumption.  The locus of the plaintiff's employment is a potentially pivotal

jurisdictional fact.

The issues outlined above relate directly to the court's subject matter jurisdiction.

Those issues must be resolved before the court may address other issues presented in

the motion to dismiss. Thus, I deny the motion without prejudice and grant the

defendants an opportunity to file a renewed motion that addressing the issue of subject

matter jurisdiction.  To the extent specific facts are relevant to the determination of the

court's subject matter jurisdiction, I note that the "court has wide discretion to allow

affidavits, other documents, and a limited evidentiary hearing to resolve disputed

jurisdictional facts under Rule 12(b)(1)." **Holt v. United States**, 46 F.3d 1000, 1003

(10th Cir. 1995).  If the defendants choose to file a renewed motion to dismiss, I direct

the defendants to address the scope and limits of tribal jurisdiction, as outlined in

**Montana v. U.S.**, 450 U.S. 544, 565 (1981), **MacArthur v. San Juan County**, 497 F.3d

1057, 1068 (10th cir. 2007), and related cases.  Of course, the analysis of this issue

must be focused on the jurisdictional facts of this case.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the defendants' **Motion To Dismiss Amended Complaint** [#24] filed

April 6, 2011, is **DENIED** without prejudice;

2.  That on or before April 16, 2012, the defendants **MAY FILE** a renewed motion

to dismiss addressing the court's subject matter jurisdiction;

3.  That on or before May 1, 2012, the plaintiffs **MAY FILE** a response to any renewed motion to dismiss;

4.  That if the defendants file a renewed motion to dismiss, the defendants shall address in the motion the scope and limits of tribal jurisdiction, as outlined in ***Montana v. U.S.***, 450 U.S. 544, 565 (1981), ***MacArthur v. San Juan County***, 497 F.3d 1057, 1068 (10th cir. 2007), and related cases, and how the specific facts of this case relate to the scope of tribal jurisdiction.

Dated March 21, 2012, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge